[Cite as *Akers v. Akers*, 2017-Ohio-9284.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Gregory T. Akers, | : | |
| Plaintiff-Appellant, | : | No. 16AP-184 |
| v. | : | (C.P.C. No. 14DR-3610) |
| Xuchen Akers, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 28, 2017

**On brief:** *Jeffrey P. Nunnari,* for appellant. **Argued:** *Jeffrey P. Nunnari*

**On brief:** *Mohammad Slaimon Ayoubi* and *Mark S. Froehlich,* for appellee. **Argued:** *Mohammad Slaimon Ayoubi* and *Mark S. Froehlich.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

HORTON, J.

{¶ 1} Plaintiff-appellant, Gregory T. Akers, appeals from the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, ordering him to pay defendant-appellee, Xuchen Akers, $14,937 based on a contractual obligation of support arising under federal law as a condition of sponsoring her permanent residency application. For the reasons set forth below, we affirm the enforceability of the obligation, but reverse and remand the trial court's determination of the period during which it accrued and, as a result, the amount of damages that Xuchen is entitled to recover.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Gregory and Xuchen were married in Beijing, China on March 15, 2005. (Nov. 16, 2015 Stipulation.) Xuchen moved to the United States in July 2006. (July 28,

2015 Pl.'s Aff. at ¶ 3, Ex. A attached to Pl.'s Reply to Def.'s Mot. in Opp.) To sponsor Xuchen's permanent residency application, Gregory signed the United States Citizenship and Immigration Services Form I-864, an Affidavit of Support ("AOS"), on June 1, 2007. (Ex. A-1 to Pl.'s Aff.)

{¶ 3} The AOS states that signing the form on behalf of an immigrant and submitting it with the immigrant's permanent residency application has the legal effect of creating a contract between the sponsor and the United States Government. (Ex. A-1 at 6.) "The intending immigrant's becoming a permanent resident is the 'consideration' for the contract." *Id.* The AOS creates an obligation on the part of the sponsor to "[p]rovide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size" until one of five conditions is fulfilled. (Ex. A-1 at 6.) The obligation ends if the immigrant (1) becomes a United States citizen; (2) has worked, or can be credited with working, 40 quarters of coverage under the Social Security Act; (3) no longer is a permanent resident and leaves the United States; (4) is subject to removal proceedings and obtains a new AOS; or (5) dies. (Ex. A-1 at 7.) The AOS form expressly warns the sponsor that "[i]f you do not provide sufficient support to the person who becomes a permanent resident based on the Form I-864, that person may sue you for this support." *Id.*

{¶ 4} Gregory filed for divorce on October 3, 2014. (Oct. 3, 2014 Compl.) Xuchen filed an answer on December 8, 2014, and asserted a counterclaim alleging that Gregory had breached his obligation of support under the AOS. (Dec. 8, 2014 Answer at ¶ 8.)

{¶ 5} After reviewing the parties' stipulations, tax returns, and other evidence, the trial court determined that Xuchen could be credited with 40 quarters of coverage under the Social Security Act at the end of 2012, at which time Gregory's obligation under the AOS terminated. However, because Xuchen had been unemployed in 2012, the trial court concluded that the AOS required Gregory to pay her $14,937 for that year, an amount that corresponded to 125 percent of the federal poverty guidelines. (Feb. 16, 2016 Am. Decision and Jgmt. Entry Decree of Divorce, hereinafter "Decree" at 5-7, 13-14.)

{¶ 6} Gregory filed a timely notice of appeal and asserts the following assignments of error:

> [I.] THE TRIAL COURT ERRED TO THE PREJUDICE OF
> APPELLANT BY ENFORCING AN AFFIDAVIT OF SUPPORT

AFTER ITS EXPIRATION BY OPERATION OF LAW AND WHERE THERE WAS NO BREACH.

[II.] ASSUMING THE AFFIDAVIT OF SUPPORT WAS ENFORCEABLE AND BREACHED FOR ANY REASON, THE TRIAL COURT NEVERTHELESS ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO PROPERLY CALCULATE QUALIFYING QUARTERS EARNED BY, AND CREDITED TO, APPELLANT AND APPELLEE FOR THE YEAR 2007.

## II. STANDARD OF REVIEW

{¶ 7}   The I-864 AOS is a contract. 8 U.S.C. 1183a(a)(1); *Erler v. Erler*, 824 F.3d 1173, 1175 (9th Cir.2016.) Contract interpretation and constructions are matters of law. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. As such, appellate courts apply a de novo standard to a trial court's interpretation or construction of a written contract. *McKeny v. Ohio Univ.*, 10th Dist. No. 17AP-392, 2017-Ohio-8589, ¶ 19, citing *Alexander*. Thus, our standard of review of the trial court's interpretation of the AOS is de novo. Furthermore, when "the issue is a question of contract law, Ohio appellate courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. The standard of review is whether or not the trial court erred." *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501, 502 (1996).[1]

## III. FIRST ASSIGNMENT OF ERROR

{¶ 8}   In support of his first assignment of error, Gregory cites 8 U.S.C. 1183a(a)(3)(A), which provides that "[a]n affidavit of support is not enforceable after such time as the alien * * * has worked 40 qualifying quarters of coverage as defined under title II of the Social Security Act or can be credited with such qualifying quarters." Gregory argues that the trial court erred by enforcing the AOS in 2016 because, by the trial court's

---

[1] Xuchen argues that an abuse of discretion standard applies, but provides no citation to support the application of this standard to appellate review of a contract. (Appellee's Brief at 8.) Xuchen expressly pleaded the breach of the AOS as a counterclaim sounding in contract. (Dec. 8, 2014 Answer.) The facts in this case are undisputed, and " 'when the facts presented in a case are undisputed, whether they constitute performance or a breach of the contract, is question of law for the court.' " *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist No. 04AP-980, 2006-Ohio-638, ¶ 35, quoting *Luntz v. Stern*, 135 Ohio St. 225, 237 (1939). The trial court's orders concerning spousal support and the division of marital assets, both of which would have been subject to an abuse of discretion standard of review, were not appealed by either party. *See, e.g., Gallo v. Gallo*, 10th Dist. No. 14AP-179, 2015-Ohio-982, ¶ 42, 49 (applying abuse of discretion standard to the allocation of marital assets and an award of spousal support).

own calculations, Xuchen could be credited with 40 qualifying quarters of work under the Social Security Act by the end of 2012. Thus, he believes that the AOS was rendered "unenforceable" by operation of law at the end of 2012. (Appellant's Brief at 20.)

{¶ 9} Gregory's argument conflates two distinct concepts: the statutory definition of the period a sponsor has an active obligation to support the immigrant and the time period during which an immigrant may sue to enforce the obligation. Although the term "period of enforceability" in 8 U.S.C. 1183a(a)(3) is suggestive of both readings, a close examination of the statute, the implementing regulations, and the language of the AOS do not support reading this phrase as a statute of limitations, which is essentially what Gregory suggests.

{¶ 10} Under 8 U.S.C. 1183a, the "period of enforceability" is the time during which a sponsor has the active obligation to support the immigrant beneficiary. The statute describes the AOS as a contract "in which the sponsor agrees *to provide support* to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line *during the period in which the affidavit is enforceable.*" (Emphasis added.) 8 U.S.C. 1183a(a)(1)(A). When describing what "means-tested public benefit[s]" a government agency may recover from a sponsor who breaches the obligation, the statute states: "An affidavit of support *shall be enforceable with respect to benefits provided for an alien before the date* the alien is naturalized as a citizen of the United States, or, if earlier, the termination date provided under paragraph (3)." (Emphasis added.) 8 U.S.C. 1183a(a)(2). Paragraph 3 describes the termination of the "period of enforceability" due to attainment of, or credit for 40 qualifying quarters of coverage under the Social Security Act. 8 U.S.C. 1183a(a)(3). In both sections of the statute, the "period" in question is that during which a sponsor has the active obligation to support the immigrant.

{¶ 11} This reading is further supported by the fact that the statute expressly provides a limitation period for actions brought by government agencies to recover means-tested public benefits from a sponsor. 8 U.S.C. 1183a(b)(2)(C) states: "Limitation on actions. No cause of action may be brought under this paragraph later than 10 years after the date on which the sponsored alien last received any means-tested public benefit to which the affidavit of support applies." If, as Gregory argues, the "period of enforceability" encompassed not only a period of a sponsor's support obligation, but the

time for filing an action as well, the distinct limitations period would be surplusage, "a result that violates the rules of statutory construction." *Huntington Natl. Bank v. 199 S. Fifth St. Co., LLC*, 10th Dist. No. 10AP-1082, 2011-Ohio-3707, ¶ 18.

{¶ 12} Furthermore, although the statute provides a limitation period of ten years for government agencies seeking to recover benefits, it provides no similar limitations period for an immigrant seeking to file an action arising from a sponsor's breach of the support obligation. Yet, the statute gives both the government or the immigrant the right to file such an action. *See* 8 U.S.C. 1183a(e) (stating that "[a]n action to enforce an affidavit of support * * * may be brought against the sponsor in any appropriate court-- (1) by a sponsored alien, with respect to financial support; or (2) by the appropriate entity of the Federal Government, a State or any political subdivision of a State * * * with respect to reimbursement"). The omission of any such limitation period for an immigrant seeking to sue a sponsor for financial support suggests that Congress did not intent to impose one.

{¶ 13} Finally, the implementing regulations and the AOS form itself only refer to the attainment or credit of the 40 qualifying quarters of Social Security coverage as a condition terminating the sponsor's support obligation, with no reference to the term "period of enforceability" upon which Gregory's argument relies. 8 C.F.R. 213a.2(e) describes the "[c]ommencement and termination of [the] support obligation," and identifies the attainment or credit of 40 qualifying quarters of Social Security coverage as one of the conditions that terminates a sponsor's obligation "by operation of law." 8 C.F.R. 213a.2(e)(2)(i). In addition, the AOS form informs the sponsor that "[y]our obligations * * * will end if the person who becomes a permanent resident based on a Form I-864 that you signed * * * [h]as worked, or can be credited with, 40 quarters of coverage under the Social Security Act."[2] (Ex. A-1 at 7.) The foregoing provisions only address the duration of the sponsor's "obligation." They do not suggest that attainment of 40 qualifying quarters of Social Security coverage terminates an immigrant's right to sue for breach of the sponsor's support obligation. Following the logic of Gregory's argument, an immigrant would not be able to exercise the right to sue for financial support provided by 8 U.S.C. 1183a(e) even one day after the termination of the sponsor's financial obligation, even if

---

[2] Under 8 C.F.R. 103.2(A)(1), the instructions on the AOS form are "incorporated" into the governing regulations.

the sponsor had accrued a substantial obligation during the period. We find no support in the statute, regulation, or the disclosures on the AOS form for so limiting an immigrant's right to sue for a breach of the sponsor's financial obligation.

{¶ 14} Gregory also argues that he did not breach his financial support obligation because he made almost $38,000 during 2012, a figure in excess of the 125 percent of the federal poverty guidelines, and Xuchen never applied for or received any government benefit during that time. However, the trial court found that the support obligation had been breached because Xuchen and Gregory had not lived together since 2010 and she had no income in 2012. Thus, there is no evidence in the record that Gregory provided the support required by the AOS during that year. Furthermore, there is no requirement under the statute that an immigrant must apply for or receive any public assistance as a prerequisite to suing a sponsor for breach of his financial obligation. As mentioned previously, the statute provides a separate cause of action for a governmental agency seeking compensation for a sponsor for benefits provided to an immigrant. 8 U.S.C. 1183a(e)(2).

{¶ 15} For the foregoing reasons, we conclude that Gregory has provided no basis for reversing the trial court's decision to enforce the AOS. Accordingly, the first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR

{¶ 16} In support of the second assignment of error, Gregory argues that the trial court failed to credit Xuchen for the proper number of Social Security credits in 2007, resulting in an erroneous determination that his obligation terminated at the end of 2012 and an incorrect calculation of damages owed under the AOS. He cites to a number of federal statutes and regulations to support his argument, which are discussed below. (Appellant's Brief at 22-27.) Xuchen contends that the trial court did not abuse its discretion in making its determination, but does not otherwise address the authority cited by Gregory. (Appellee's Brief at 14-16).

{¶ 17} Gregory's argument raises two questions. First, what is the precise duration of the time period during which his obligation to Xuchen accrued under the AOS? Second, what is the proper amount of damages incurred by that obligation? We consider each in turn.

### A. The Duration of Gregory's Obligation under the AOS

{¶ 18} The trial court determined that the support obligation commenced on June 1, 2007, the date that Gregory signed the AOS. Neither party disputes this determination. Rather, they dispute the date by which Xuchen could be credited with the requisite number of qualifying quarters of Social Security coverage, thereby terminating Gregory's obligation. Relying on *Davis v. Davis*, 6th Dist. No. WD-11-006, 2012-Ohio-2088, the trial court calculated that Xuchen could be credited with 40 qualifying quarters of Social Security coverage "as of the close of 2012," and thus Gregory's support obligation "concluded as of the end of the 2012 calendar year." (Decree at 7.) The trial court laid out its calculations in a table attached to its decision. (Decree at Ex. 2.)

{¶ 19} At issue in *Davis* was whether the immigrant spouse could be credited with the qualifying quarters of Social Security coverage based on both her earnings and that of her ex-spouse. *Davis* at ¶ 23. The Sixth District Court of Appeals held that, based on the plain language of 8 U.S.C. 1183a(a)(3)(A) and the instructions on the I-864 Form incorporated into the governing regulations, an immigrant could "obtain credit both for their own work and for work performed by a spouse during the marriage; they do not require the immigrant to choose one or the other." *Id.* at ¶ 24. Here, however, the parties do not dispute that Xuchen may be credited with a combination of qualifying Social Security credits based on the earnings of both parties. *Davis* did not address the precise issue of determining the endpoint of the sponsor's support obligation based on a calculation of qualifying quarters of Social Security credit.

{¶ 20} To make this determination, we once again turn to the statute and the regulations implementing it. 8 U.S.C. 1183a(a)(3)(A) states: "An affidavit of support is not enforceable after such time as the alien * * * has worked 40 qualifying quarters of coverage as defined under title II of the Social Security Act or can be credited with such qualifying quarters as provided under subparagraph (B)." The provision regarding qualifying quarters, subparagraph B, states the following: "For purposes of this section, in determining the number of qualifying quarters of coverage under title II of the Social Security Act an alien shall be credited with * * * all of the qualifying quarters worked by a spouse of such alien during their marriage and the alien remains married to such spouse or such spouse is deceased." 8 U.S.C. 1183a(a)(3)(B).

{¶ 21} The Social Security Act defines a "quarter of coverage" as:

> [E]ach portion of the total of the wages paid * * * to an individual in a calendar year which equals the amount required for a quarter of coverage in that calendar year * * *, with such quarter of coverage being assigned to a specific calendar quarter in such calendar year only if necessary in the case of any individual who has attained age 62 or died or is under a disability and the requirements for insured status * * * would not otherwise be met.

42 U.S.C. 413(a)(2)(ii).

{¶ 22} In addition, the Social Security regulations state the following:

> Crediting quarters of coverage (QCs). For calendar years after 1977, we credit you with a QC for each part of the total wages paid and self-employment income credited (under § 404.144) to you in a calendar year that equals the amount required for a QC in that year. For example, if the total of your wages and self-employment income for a calendar year is more than twice, but less than 3 times, the amount required for a QC in that year, we credit you with only 2 QCs for the year.

20 CFR 404.143(a).

{¶ 23} An individual may earn a maximum of four quarters of Social Security coverage in one calendar year. 42 U.S.C. 413(a)(2)(B)(vii). The amount required to earn a quarter of coverage varies, and is determined annually by Social Security. 42 U.S.C. 413(d).

{¶ 24} In 2007, a worker earned one qualifying quarter of Social Security credit for each $1,000 of earnings. 71 Fed.Reg. 62636. Gregory's taxable earnings for 2007 were $33,565, entitling him to four quarters of Social Security coverage. Xuchen's earnings were $3,118, entitling her to three quarters. (Ex. A-2 to Pl.'s Aff.) Under 8 U.S.C. 1183a(a)(3)(B), Xuchen may be credited with the four quarters Gregory earned in 2007. Thus, Xuchen earned, or could be credited with seven credits by the end of 2007.

{¶ 25} The trial court only credited Xuchen with four qualifying quarters of coverage in 2007, based on its calculation that she and Gregory had only earned two credits each that year. The trial court did not explain its rationale for the calculation, but may have believed that the parties could only earn one-half the yearly maximum of four quarters of coverage because Gregory signed the AOS form on June 1, 2007, halfway

through the calendar year. However, the date that Gregory's obligation accrued under the AOS does not determine how qualifying quarters of coverage are earned or credited. Rather, as set forth in 42 U.S.C. 413(a)(2)(ii) and 20 C.F.R. 404.143(a), Social Security credits an individual with quarters of coverage based on his or her annual earnings. *See also* 20 C.F.R. 404.140(c) (noting that, under Section 404.143, Social Security will "generally credit you with a QC for each part of your total covered earnings in a calendar year that equals the amount required for a QC in that year"). Furthermore, even if Gregory's earnings for one-half of the year were only taken into account, they still would have surpassed the $4,000 required to earn four quarters of coverage for the year. For these reasons, the trial court erred insofar as it only calculated Xuchen with having earned, or being credited with, four quarters of coverage for 2007.

{¶ 26} The effect of crediting three additional quarters of coverage in 2007 advances the termination date of Gregory's obligation under 8 U.S.C. 1183a(a)(3). Once the immigrant "has worked 40 qualifying quarters of coverage * * * or can be credited with such qualifying quarters" that have been "worked by a spouse of such alien during their marriage," the obligation ends. *Id.* Because each party earned four qualifying quarters in 2008, 2009, 2010, and 2011, Xuchen could be credited with another 32 qualifying quarters after the seven from 2007. Thus, by the end of 2011, Xuchen had worked, or could be credited with, 39 qualifying quarters. Although Xuchen had no earnings in 2012, Gregory earned $37,986 that year. In 2012, the amount of earnings required to be credited with a quarter of coverage was $1,130. 76 Fed.Reg. 66111. Gregory had undoubtedly earned that amount by the end of the first quarter of 2012. Accordingly, his support obligation under the AOS ceased to accrue, and ended "by operation of law" at that time. 8 C.F.R. 213a(e)(2)(i).

### B. The Amount of Damages Xuchen is Entitled to under the AOS

{¶ 27} The trial court compared 125 percent of the federal poverty level against Xuchen's income for each of the years in question and concluded that the only year that her income fell below the threshold was 2012, when she earned no income. Accordingly,

the trial court awarded Xuchen $14,937, the entire amount of the 125 percent of the federal poverty threshold for the year.[3] (Decree at 7, 13-14.)

{¶ 28} Because Gregory's obligation terminated at the end of the first quarter of 2012, a recalculation of Xuchen's damages is required. "To determine the appropriate damages, courts should compare the sponsored immigrant's annual income for the particular years at issue against the 125% poverty threshold for each particular year." *Hrachova v. Cook*, M.D.Fla. No. 5:09-cv-95-Oc-GRJ (Nov. 3, 2009). *See also Shumye v. Felleke*, 555 F.Supp.2d 1020, 1024 (N.D.Cal.2008) ("To be placed in as good a position as she would have been had Defendant performed his support obligation on an annual basis, this Court must compare Plaintiff's income against the 125% poverty threshold for each individual year in question"). Because Gregory's support obligation terminated at the end of the first quarter of 2012, Xuchen is only entitled to damages equal to one fourth of the 125 percent poverty threshold for 2012, or one-fourth of $14,937. This prorated amount equals $3,734.25.

{¶ 29} Because the trial court erred in its calculation of the quarters of coverage of Social Security credit earned or creditable to Xuchen and, as a consequence, the amount of Gregory's support obligation under the AOS, we sustain the second assignment of error.

## V. CONCLUSION

{¶ 30} The first assignment of error is overruled and the second assignment of error is sustained. This cause is remanded to the Franklin County Court of Common Pleas, Division of Domestic Relations, with instructions to modify the amount of damages awarded to Xuchen under the AOS in the Decree to $3,734.25.

*Judgment reversed; cause remanded with instructions.*

KLATT and BRUNNER, JJ., concur.

_____

---

[3] Xuchen and Gregory stipulated that they had lived separately for five months in 2008, when her annual income was $10,375, $3,626 below $14,001, 125 percent of the 2008 poverty threshold. The trial court declined to award Xuchen additional damages for breach of the AOS during 2008 because no evidence demonstrated "whether [she] was able to maintain herself above the requisite 125% threshold for that time period." (Decree at 6.) Xuchen did not file a cross-appeal asserting error in this finding.